IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

MONIQUE ROBINSON,                    )
                                     )
          Plaintiff,                 )
                                     )
     v.                              )     CIVIL ACTION NO. 2:13cv657-CSC
                                     )              (WO)
CAROLYN W. COLVIN,                   )
Acting Commissioner of Social Security, )
                                     )
          Defendant.                 )

## MEMORANDUM OPINION

## I. Introduction

The plaintiff applied for applied for disability insurance benefits pursuant to Title II

of the Social Security Act, 42 U.S.C. §§ 401, *et seq*., alleging that she was unable to work

because of a disability.  She is seeking disability benefits for a closed period from the date

of onset on January 15, 2009 until the last date she was insured on December 31, 2010. Her

application was denied at the initial administrative level.  The plaintiff then requested and

received a hearing before an Administrative Law Judge ("ALJ").  Following the hearing, the

ALJ also denied the claim.  The Appeals Council rejected a subsequent request for review.

The ALJ's decision consequently became the final decision of the Commissioner of Social

Security (Commissioner).[1]  *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  The

case is now before the court for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  The

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

parties have consented to the United States Magistrate Judge conducting all proceedings in

this case and ordering the entry of final judgment, pursuant to 28 U.S.C. § 636(c)(1) and

M.D. Ala. LR 73.1.  Based on the court's review of the record in this case and the briefs of

the parties, the court concludes that the decision of the Commissioner should be affirmed.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the

person is unable to

> engage in any substantial gainful activity by reason of any medically
> determinable physical or mental impairment which can be expected to result
> in death or which has lasted or can be expected to last for a continuous period
> of not less than 12 months . . .

To make this determination,[2] the Commissioner employs a five-step, sequential

evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1)    Is the person presently unemployed?
> (2)    Is the person's impairment severe?
> (3)    Does the person's impairment meet or equal one of the specific
>         impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4)    Is the person unable to perform his or her former occupation?
> (5)    Is the person unable to perform any other work within the economy?

> An affirmative answer to any of the above questions leads either to the next
> question, or, on steps three and five, to a finding of disability.  A negative
> answer to any question, other than step three, leads to a determination of "not
> disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Dyer v. Barnhart,* 395 F.3d 1206, 1210 (11th Cir. 2005). Substantial evidence is "more than a scintilla," but less than a preponderance; it "is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004) (quotation marks omitted). The court "may not decide the facts anew, reweigh the evidence, or substitute . . . [its] judgment for that of the [Commissioner]." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004) (alteration in original) (quotation marks omitted).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III. The Issues

**A. Introduction**. The plaintiff was 45 years old on the date of administrative hearing. (R. 47, 61). She has completed high school and taken five semesters of college. (R. 48, 62-63). Her past relevant work experience includes work as a day worker, housekeeper/cleaner, and merchandise deliverer. (R. 24). Following the hearing, the ALJ concluded that the plaintiff has severe impairments of "cervical radiculopathy, lumbar spondylosis without myelopathy, brachial neuritis, hypertension, fibromyalgia,

gastroesophageal reflux disease (GERD), and depression." (R. 13). The ALJ concluded that the plaintiff was unable to perform her past relevant work, but, using the Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P., App. 2, as a framework and relying on the testimony of a vocational expert, she also concluded that there were significant number of jobs in the national economy that the plaintiff could perform. (R. 25-26). Thus, the ALJ concluded that Robinson was not disabled because she has the residual functional capacity to perform sedentary work with restrictions.

**B. Plaintiff's Claims**. As stated by the plaintiff, she presents two issues for the Court's review.

I.    The Commissioner's decision should be reversed because the ALJ failed to give great weight to the opinion of Ms. Robinson's treating physician, Dr. Oneil Culver.

II.   The Commissioner's decision should be reversed because the ALJ committed reversible error by substituting her own opinion in place of an opinion by Dr. David Ghostley.

(Doc. # 12, Pl's Br. at 6).

### IV. Discussion

A disability claimant bears the initial burden of demonstrating an inability to return to her past work. *Lucas v. Sullivan*, 918 F.2d 1567 (11th Cir. 1990). In determining whether the claimant has satisfied this burden, the Commissioner is guided by four factors: (1) objective medical facts or clinical findings, (2) diagnoses of examining physicians, (3) subjective evidence of pain and disability, e.g., the testimony of the claimant and her family

4

or friends, and (4) the claimant's age, education, and work history. *Tieniber v. Heckler*, 720 F.2d 1251 (11th Cir. 1983). The ALJ must conscientiously probe into, inquire of and explore all relevant facts to elicit both favorable and unfavorable facts for review. *Cowart v. Schweiker,* 662 F.2d 731, 735-36 (11th Cir. 1981). The ALJ must also state, with sufficient specificity, the reasons for her decision referencing the plaintiff's impairments.

> *Any* such decision by the Commissioner of Social Security which involves a determination of disability and which is in whole or in part unfavorable to such individual *shall contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based.*

42 U.S.C. § 405(b)(1) (emphases added). Within this analytical framework, the court will address the plaintiff's claims.

   **A.      Treating Physician.** Robinson argues that the ALJ failed to give great weight to the opinion of her treating physician, Dr. Oneil Culver. (Doc. # 12, Pl's Br. at 8-9). The law in this circuit is well-settled that the ALJ must accord "substantial weight" or "considerable weight" to the opinion, diagnosis, and medical evidence of the claimant's treating physician unless good cause exists for not doing so. *Jones v. Bowen,* 810 F.2d 1001, 1005 (11th Cir. 1986); *Broughton v. Heckler*, 776 F.2d 960, 961 (11th Cir. 1985). The Commissioner, as reflected in her regulations, also demonstrates a similar preference for the opinion of treating physicians.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the

> objective medical findings alone or from reports of individual examinations, such as consultive examinations or brief hospitalizations.

*Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 CFR § 404.1527 (d)(2)). The ALJ's failure to give considerable weight to the treating physician's opinion is reversible error. *Broughton*, 776 F.2d at 961-62.

There are, however, limited circumstances when the ALJ can disregard the treating physician's opinion. The requisite "good cause" for discounting a treating physician's opinion may exist where the opinion is not supported by the evidence, *or* where the evidence supports a contrary finding. Good cause may also exist where a doctor's opinions are merely conclusory, inconsistent with the doctor's medical records, *or* unsupported by objective medical evidence. *See Jones v. Dep't. of Health & Human Servs.*, 941 F.2d 1529, 1532-33 (11th Cir. 1991); *Edwards v. Sullivan*, 937 F.2d 580, 584-85 (11th Cir. 1991); *Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987). The weight afforded to a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence of the claimant's impairment. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986). The ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983). The ALJ must articulate the weight given to a treating physician's opinion and must articulate any reasons for discounting the opinion. *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987).

On June 29, 2011, Dr. Oneil Culver completed a physical capacity evaluation and a

clinical assessment of pain assessing Robinson's impairments. (R. 706-707). Dr. Culver is not an orthopaedic surgeon, but is a general surgeon and endoscopist. (R. 364). According to Dr. Culver, Robinson's pain was severe enough to distract her from work; physical activity would greatly increase her pain; and side effects from her medication would cause severe limitations. (R. 706). He also opined that she could lift 10 pounds occasionally and 5 pounds frequently, sit for two hours in a work day, stand or walk for three hours and she would be absent from work more than four days per month. (R. 707). It does not appear that Dr. Culver examined Robinson on the date he completed the evaluation and pain assessment. (R. 732). Previously, Dr. Culver saw Robinson on January 23, 2006, February 5, 2007, August 6, 2007, and June 22, 2011. (R. 363-65, 732). Robinson completed a patient history and registration form on January 23, 2006. (R. 364-65). There is no indication on those records of the reason for Robinson's visit. On February 5, 2007, Robinson was seen by Dr. Culver for complaints of low back pain, numbness and pinching sensation in her left hand. (R. 363). Dr. Culver's treatment note does not reflect an evaluation, diagnosis or course of treatment. (*Id.*) On June 22, 2011, Robinson complained of lower back pain and left arm pain.[3] This is the extent of Dr. Culver's treatment records of Robinson.

Almost a year after the expiration of her insured status, on December 6, 2011, Dr. Culver wrote a letter in support of Robinson's claim for disability benefits.

Mrs. Monique Robinson has been a patient of mine since 1/23/2006. She was gainfully employed as a custodial worker and a n oxygen supply technician for

---

[3] This appointment is, of course, almost six (6) months after Robinson's last insured date.

years.  Mrs. Robinson reports a long history of left shoulder, left hand pain, cervical radiculopathy, chronic recurrent headaches with intermittent diplopia, obesity, fibromyalgia, depression, antalgic gait, chronic lumbar disc disease with chronic low back pain and a more recent onset of insomnia and the loss of the ability to remain in the work force.  She relates a history of multiple prior motor vehicle accidents.

Over the years, each day had become a profound challenge for Mrs. Robinson. She is in constant pain throughout the day.  During the night, the pain awakens her from sleep.  In spite of pain management, limiting her activities and absolute rest, Mrs. Robinson continues to have multiple physical ailments. Stooping, bending, squatting, and climbing stairs, she carefully avoids. Currently, Mrs. Robinson occupies her day dealing with her health issues.

Mrs. Robinson is unable to engage in any current or future work related activities. She finds it disconcerting not to be employable. . . .

(R. 733).

After reviewing the medical evidence, the ALJ declined to afford Dr. Culver's opinion

"controlling weight" because

it is unclear as to how often and the circumstances that this physician has treated the claimant.  The document contains insufficient rationale with no citation to medical evidence that would reasonably support the opinion in [the physical capacity evaluation.]

(R. 20).  The ALJ found Dr. Culver's opinion to "be less than fully credible, assigns little

weight, and otherwise finds it not to be persuasive."  (R. 21).  The ALJ then addressed Dr.

Culver's December 2011 letter.

The undersigned does not give controlling weight to Dr. Culver's opinion in this document because it is unclear as to how often and the circumstances that this physician has treated the claimant.  The document contains insufficient rationale with no citation to medical evidence that would reasonably support the opinion in this document.  The opinion in this document is inconsistent with the record as a whole and the claimant's history of medical treatment.

8

For these reasons, the undersigned finds the opinion to be less than fully credible, assigns little weight, and otherwise finds it not to be persuasive.

(*Id*.)

The ALJ acknowledged that Robinson suffers from some pain, but after a thorough review of her treatment records, discounted her credibility and Dr. Culver's assessment. (R. 20-24). The ALJ's decision to discount Dr. Culver's assessment is supported by substantial evidence. Although Robinson testified that her most disabling impairment is pain in her lower back and left arm,[4] (R. 67-68), Dr. Culver's treatment records do not support his assessment of the severity of her impairments.

Dr. Culver's assessment of Robinson was based on four office visits over a five (5) year period. (R. 732, 363-65). There is no indication of Dr. Culver's treatment of these conditions, and no indication that Dr. Culver reviewed any x-rays or MRI scans to corroborate the severity of Robinson's limitations.[5] Consequently, Dr. Culver's treatment notes do not support the level of disability he attributes to Robinson.

In addition, the other medical evidence of record supports the ALJ's decision to discount Dr. Culver's opinion. Dr. William King performed physical examinations of

---

[4] The ALJ discounted Robinson's testimony regarding her pain and limitations, and the plaintiff does not challenge the ALJ's credibility findings.

[5] In a December 16, 2011, letter to the ALJ, Robinson's attorney concedes that there is a "gap in Ms. Robinson's treatment with Dr. Culver between 2007 and 2011." (R. 354-55). However, he argues that Dr. Patel's records support Dr. Culver's opinion. There is no evidence that Dr. Culver reviewed or considered Dr. Patel's records in reaching his conclusions about Robinson's abilities.

Robinson on December 8, 2009, and August 2, 2011.[6]  (R. 435-37, 723-25).  Prior to the

expiration of her insured status, on December 8, 2009, Dr. King conducted a physical

evaluation of Robinson.  (R. 435-37).  Robinson complained of back pain, and left hand and

shoulder pain.  (R. 435).  Although Robinson reported that she had been diagnosed with

fibromyalgia, Dr. King noted that "none of her symptoms that she has related to me sound

like fibromyalgia in that her pain is pretty much localized in just these 2 regions." (*Id*.).  Dr.

King noted full range of motion in her upper and lower extremities.  (R. 436).  He noted no

tenderness in her left arm or wrist.  (*Id*.)  Dr. King noted positive straight leg raises in the

seated and supine positions but also noted a full range of motion in Robinson's back.  (R.

437).  She was able to touch her toes.  (*Id*.)  In addition, Dr. King noted that "in touching her

on her back in different trigger point areas and on her chest and around her clavicle there is

no evidence of any trigger point tenderness or pain.  There is not even any tenderness in her

_____

    [6]  At some point in 2007, Robinson had "EMG/NCS evidence of a C5-6 LUE radiculopathy." (R.
696).  The date of the studies is unclear and the studies were not included in the record.
    On July 14, 2011, Robinson underwent x-rays of her wrists, cervical spine, and lumbar spine.  (R.
708-711).  The x-rays of her wrists were negative.  (R. 708).  The x-ray of her cervical spine revealed mild
degenerative disc disease at C3-4 and C4-5.  (R. 709). The x-ray of her lumbar spine was "essentially
negative." (R. 710).

> Lumbar spine is in anatomic alignment with no evidence of fracture or subluxation.
> Intervertebral disc space is well preserved.  Small osteophyte formation is noted along the
> anteroinferior aspect of L4.
>
> A 12 mm calcific density is seen projecting over the right transverse process of L3.  This is
> not definitively identified on the lateral view and most likely represents a pill within the
> bowel.  However, a right ureteral stone cannot be excluded with certainty.

(*Id*.).
    The ALJ considered this medical evidence in determining Robinson's residual functional capacity.
(R. 22-23).

lower lumbar area." (*Id*.).  Dr. King's impression was as follows.

1 -   Chronic lower back pain of unknown etiology with normal back exam.
2 -   Chronic left forearm and wrist pain of unknown etiology with normal exam and no signs of carpal tunnel although I have seen that mentioned in some old records she has.
3 -   I see no signs or symptoms suggestive of fibromyalgia although that word has been mentioned by a pain clinic physician.
4 -   Gastroesophageal Reflux which is stable
5 -   Hyperlipidemia
6 -   Status Post Thyroidectomy
7 -   Hypertension

(*Id*.)

Dr. King opined that Robinson could do work related activities including sitting, walking, standing and lifting.  (*Id*.)  He concluded his report by saying "based on her exam I can really see no etiology of her claim of pain."  (*Id*.)

Dr. King performed a second evaluation on August 2, 2011, outside the insured period.  (R. 723-25).  He also completed a medical source statement of ability to perform work-related activities.  (R. 716-22).  At the second examination, Robinson presented in no distress and she had a full range of motion in her neck.  (R. 724).  Tinel sign was negative in both hands.  (*Id*.)  She had 5/5 bilateral grip strength and her elbows, shoulders and wrists were all normal.  (*Id*.)  Dr. King suggested that Robinson was "not giving much effort in doing range of motion on her back."  (R. 725).  "Straight leg raises illicit no pain in sitting or supine positions."  (*Id*.)  Her gait was normal as was her heel to toe walking.  (*Id*.)  Dr. King described her examination as unremarkable.  (*Id*.)  He opined that

her ability to do work related activity such as sitting is not impaired.  Standing

is not impaired.  Walking is not impaired.  Bending and stooping is somewhat impaired due to the stiffness in her lower back.  Lifting and carrying objects should not be impaired.  Note during her exam she said she could not lift more than 5 lbs, but her purse is extremely heavy.  Handling objects should not be impaired.  Hearing, speaking and traveling should not be impaired.

(*Id.*)

On August 6, 2007, Robinson presented to Southeast Pain Management Center complaining of lower back pain, neck pain and left arm pain.  (R. 672).  The severity of her pain was described as mild.  (*Id.*)  On August 14, 2007, Robinson underwent a facet/median block injection.  (R. 684).  She was exhibiting "[n]o pain behaviors.  Facial appearance is relaxed."  (*Id.*)  Her mobility and range of motion was within normal limits and she had "mild generalized tenderness."  (R. 684, 686).

Robinson presented to Dr. Rajesh Patel on November 11, 2009, complaining of indigestion, hypertension and elbow pain which she attributed to a diagnosis of fibromyalgia.  (R. 480-84, 513-17).  Dr. Patel noted no swelling, redness or tenderness of her elbow.  She had normal flexion and extension.  (*Id.*).  Her back was normal.  (R. 482).  On December 9, 2009, Dr. Patel noted that Robinson's back was normal.  (R. 459).

On March 9, 2010, Robinson complained to Dr. Patel of acid reflux and heartburn, left elbow and arm pain, and to follow up on her hypertension.  (R. 473).  There was no swelling, redness, or tenderness of her left elbow.   (R. 475).  Her range of motion was normal.  (*Id.*)  Her back was normal.  (*Id.*)  Dr. Patel diagnosed Robinson with GERD

12

(gastroesophageal reflux disease), fibromyalgia[7], pain in limb and nausea.  (*Id*.)

On July 27, 2010, Robinson complained to Dr. Patel of fibromyalgia and left ear pain. (R. 549-551).  Dr. Patel noted that Robinson was a college student and she exercised by cycling and using a treadmill.  (R. 550).  At that time, she was diagnosed with a headache and an ear infection.  (R. 551).  On October 8, 2010, Robinson presented to Dr. Patel for a follow-up for her hypertension and heartburn.  (R. 558).

On January 11, 2011, Robinson complained of coughing and anxiety attacks.  (R. 575-79).  She did not complain of lower back pain.  (*Id*.)  On April 7, 2011, she returned to Dr. Patel for a follow-up visit.  (R. 582-87).  At that time, her right elbow was tender but there was no swelling.  (R. 584).  In addition, she denied side effects from her medications, sleep disturbances or shoulder pain.  (R. 582).

The medical evidence in the record contradicts Dr. Culver's assessment of the severity of Robinson's impairments.  The  ALJ may disregard the opinion of a physician, provided that she states with particularity reasons therefor.  *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987).  The ALJ examined and evaluated the treatment records for evidence supporting Dr. Culver's assessment of Robinson's ability to work, and she considered Robinson's own testimony.  Only then did the ALJ discount Dr. Culver's assessment of

---

[7] Fibromyalgia is usually diagnosed using tender and trigger points. To meet the medical criteria for fibromyalgia, a patient must have "[w]idespread pain in all four quadrants of the body for a minium of three months" and "[a]t least 11 of the 18 specified tender points."  *See Fibromyalgia Network*, http://www.fmnetnews.com/fibro-basics/diagnosis (last accessed on June 12, 2014 at 15:37 p.m.)
There is no indication in Dr. Patel's treatment records that he examined Robinson for tender or trigger points to substantiate a diagnosis of fibromyalgia.

Robinson's abilities.  "Even though Social Security courts are inquisitorial, not adversarial, in nature, claimants must establish that they are eligible for benefits." *Ingram v. Comm'r of Soc. Sec.,* 496 F.3d 1235, 1269 (11th Cir. 2007) (citing *Doughty v. Apfel,* 245 F.3d 1274, 1281 (11th Cir. 2001)). *See also Holladay v. Bowen,* 848 F.2d 1206, 1209 (11th Cir. 1988). This the plaintiff has failed to do.  Based upon its review of the ALJ's decision and the objective medical evidence of record, the court concludes that the ALJ properly rejected Dr. Culver's opinion regarding the limitations caused by Robinson's back and left arm pain.

   **B.     Opinion of Consultative Physician.**  Robinson next complains that the ALJ improperly substituted her judgment for that of Dr. Ghostley.  Dr. Ghostley conducted a consultative psychological examination of Robinson on November 25, 2009.  (R. 432-33). Dr. Ghostley opined

> Ms. Robinson's ability to function independently and manage finances is unimpaired.  Presently, her ability to understand, remember and carry out instructions is mildly impaired, while her ability to respond appropriately to supervisors, co-workers, and work pressures in a work setting is markedly impaired.

(R. 433)

   Robinson argues that the ALJ's residual functional capacity ("RFC") assessment is not supported by substantial evidence because "the ALJ offers no facts to support her contention that Ms. Robinson is less limited than Dr. Ghostley indicated." (Doc. # 12 at 13-14).  The ALJ concluded that the plaintiff had the residual functional capacity to perform sedentary work with some limitations.  Specifically, the ALJ limited Robinson to "simple,

routine tasks that would not require more than occasional independent decision making or changes in the work setting . . . [Robinson] could also experience deficits in concentration, persistence or pace, which cause her to be off task or at a non-productive pace for approximately five percent of the workday."  (R. 17).

An ALJ is required to independently assess a claimant's residual functional capacity "based upon all of the relevant evidence." 20 CFR § 404.1545(a)(3) ("We will assess your residual functional capacity based on all of the relevant medical and other evidence."); 20 C.F.R. § 404.1546(c) ("Responsibility for assessing residual functional capacity at the administrative law judge hearing . . . level.  If your case is at the administrative law judge hearing level . . ., the administrative law judge . . . is responsible for assessing your residual functional capacity.")  *See also Lewis*, 125 F.3d at 1440 ("The residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite [her] impairments.").  "Residual functional capacity, or RFC, is a medical assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms. 20 C.F.R. § 416.945(a)."  *Peeler v. Astrue,* 400 Fed. Appx. 492, 494 n.2 (11th Cir. 2010).  The ALJ stated that she

> considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 404.1529 and SSRs

96-4p[8] and 96-7p.[9]   The undersigned has also considered opinion evidence in accordance with the requirements of 20 C.F.R. 404.1527 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.[10]

(R. at 17) (footnotes added).

The ALJ specifically considered Dr. Ghostley's opinion and discounted that aspect related to Robinson's marked limitation.

> The undersigned does not give significant weight to Dr. Ghostley's finding that the claimant is markedly impaired in her ability to respond appropriately to supervisors, co-workers, and work pressures in a work setting.  On mental status exam, Dr. Ghostley reported that the claimant's judgment with regard to social functioning and family relationships was thought to be impaired due to irritability.  This finding is inconsistent with the claimant's statements that she feels better when she is around family, friends, church members, and college students.

(R. 19-20).

Substantial evidence supports the ALJ's RFC determination.   Dr. Ghostley's conclusory opinion is not substantiated by any notes in his evaluation.  Moreover, Robinson testified that during the insured period of disability, she attended college taking three classes each semester.  (R. 48, 62-63).  She testified that she has had no mental health treatment or counseling.  (R. 79).  Although Robinson is prescribed Cymbalta by Dr. Patel, she has not

---

[8]  This Ruling clarifies the policy of the Social Security Administration on the evaluation of symptoms in the adjudication of claims for disability benefits under title II and title XVI of the Social Security Act.

[9]  This Ruling clarifies when the evaluation of symptoms, including pain, requires a finding about the credibility of an individual and explains the factors to be considered in assessing the credibility of the individual's statements about symptoms.

[10]  Generally, these Rulings describe how the Commissioner evaluates and uses medical source opinions.

16

sought any psychological treatment.  In addition, Robinson testified that she is "better in school because [she] was around people."  (R. 78).

Although Robinson also complains that the ALJ's RFC is contrary Dr. Ghostley's opinion about her mental limitations, the ALJ was not required to accept Dr. Ghostley's opinion about her marked impairment in forming Robinson's RFC.  The ALJ evaluated the evidence before her which led her to conclude that the plaintiff can perform sedentary work with limitations.  It is not the province of this court to reweigh evidence, make credibility determinations, or substitute its judgment for that of the ALJ.  Instead the court reviews the record to determine if the decision reached is supported by substantial evidence.  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).  The court has independently considered the record as a whole and finds that the record provides substantial support for the ALJ's conclusions.  Consequently, the court concludes there was sufficient medical evidence before the ALJ from which she properly could made a residual functional capacity assessment.

Robinson accuses the ALJ of substituting her opinion on her mental limitations by improperly relying on the opinion of a non-examining physician, and she should have given more weight to Dr. Ghostley's opinion.  The ALJ accorded significant weight to the opinion of the non-examining physician but gave Robinson the benefit of the doubt and found her to have "moderate functional limitation in restriction of activities of daily living." (R. 20).  An ALJ is entitled to rely on the opinion of a non-examining reviewing physician whose opinion is supported by the record.  *See Sharfarz*, 825 F.2d at 280 ("The opinions of non-examining,

reviewing physicians, . . . *when contrary to those of examining physicians*, are entitled to little weight in a disability case, and *standing alone* do not constitute substantial evidence." (emphasis added.)).  *See also Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir.1990) (holding that an ALJ may rely on the assessment of a non-examining doctor whose opinion is based on careful evaluation of the medical evidence, is not the sole medical evidence upon which the ALJ relies, and is supported by or does not contradict the opinion of the examining doctor).  In this case, the ALJ did not abandon her task of assessing Robinson's residual functional capacity to the non-examining state agency physician, but, as required by 20 C.F.R. § 404.1546(c), the ALJ independently assessed Robinson's residual functional capacity based on all of the evidence in the record.  *See Lewis, supra*.         While the ALJ has the responsibility to make a determination of plaintiff's RFC, it is plaintiff who bears the burden of proving her RFC, *i.e.*, she must establish through evidence that her impairments result in functional limitations and that she is "disabled" under the Social Security Act.  *See* 20 C.F.R. § 404.1512 (instructing claimant that the ALJ will consider "only impairment(s) you say you have or about which we receive evidence" and "[y]ou must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say that you are disabled").  *See also Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001) (it is claimant's burden to prove RFC, and ALJ's responsibility to determine RFC based on medical records, observations of treating physicians and others, and claimant's description of limitations).  The ALJ had before her sufficient medical evidence from which

she could make a reasoned determination of Robinson's residual functional capacity.

Pursuant to the substantial evidence standard, this court's review is a limited one; the entire record must be scrutinized to determine the reasonableness of the ALJ's factual findings. *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992). Given this standard of review, the court finds that the ALJ's decision was supported by substantial evidence.

## V.  Conclusion

The court has carefully and independently reviewed the record, and concludes that the decision of the Commissioner is supported by substantial evidence.

A separate order will be entered affirming the Commissioner's decision.

Done this 17th day of June, 2014.

_____/s/Charles S. Coody_____
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE

19